UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONNIE SCHOOR-HADDAD,<br><br>           Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>           Defendant. | Case No. SACV 16-1951-JPR<br><br>**MEMORANDUM DECISION AND ORDER AFFIRMING COMMISSIONER** |

**I.    PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her applications for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed August 11, 2017, which the Court has taken under submission without oral argument. For the reasons stated below, the

---

[1] Nancy A. Berryhill is substituted in as the correct Defendant.

1

Commissioner's decision is affirmed.

**II.  BACKGROUND**

Plaintiff was born in 1957.  (Administrative Record ("AR") 38, 59.)  She completed high school (AR 39) and has worked as a caregiver and property manager (AR 44).

In May and June 2014, Plaintiff filed applications for DIB and SSI, alleging in each that she had been unable to work since February 6, 2010,[2] because of depression, fibromyalgia, anxiety, a herniated disc, paranoia, fractures in both feet, and an inability to walk.  (AR 127, 131-56, 158.)  After her applications were denied (AR 85-91), she requested a hearing before an Administrative Law Judge (AR 92-93).  A hearing was held on February 16, 2016, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert.  (AR 33-58.)  In a written decision issued on March 29, 2016, the ALJ found Plaintiff not disabled.  (AR 21-32.)  Plaintiff requested review and submitted additional medical evidence to the Appeals Council.  (See AR 17, 471-75.)  On August 25, 2016, the council denied review, finding that the additional evidence

---

[2] At her hearing, Plaintiff moved to amend the alleged disability-onset date to February 9, 2014, because she had worked as a caregiver until then; she claimed the February 2010 date was "a typo" even though she had clearly written it on numerous different forms.  (AR 42-43; see also AR 132 (SSI application stating onset date of Feb. 6, 2010), 152 (DIB application stating onset date of Feb. 6, 2010), 181 (disability report stating onset date of Feb. 6, 2010), 186 (disability report stating onset date of Feb. 6, 2010), 219 (additional disability report stating onset date of Feb. 6, 2010).)  The ALJ "grant[ed] the motion" (AR 43), but in her decision she nonetheless refers to the onset date as February 6, 2010 (see AR 23).  Because the Court finds that Plaintiff was not disabled at any time through the date of the ALJ's decision, the onset date does not matter.

related to a later period and did not provide a basis for changing the ALJ's decision. (AR 1-7.) The council ordered that the new evidence be made part of the administrative record. (AR 6.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is

3

expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and her claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth

4

step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[3] to perform her past work; if so, she is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.  The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability-onset date. (AR 23.) At step two, she concluded that Plaintiff had the following severe impairments: "mild disc bulge lumbar spine; and multiple level degenerative disc disease (DDD) cervical spine with central spinal and foraminal compromise." (Id.) At step three, the ALJ found that she did not have an impairment or combination of impairments falling under a Listing. (AR 25.)

---

[3] RFC is what a claimant can do despite existing exertional and nonexertional limitations. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

5

1    At step four, the ALJ found that Plaintiff had the RFC to
perform "less than the full range of medium work"; specifically,
she could

> lift/carry 50 pounds occasionally and 25 pounds
> frequently; stand[/]walk six hours in an eight-hour
> workday; sit six hours in an eight-hour workday;
> frequently push/pull with bilateral upper extremity;
> occasionally climb ramps, stairs, ladders, ropes and
> scaffolds; frequently balance, stoop, kneel, crouch and
> crawl; and frequent[ly] reach[] overhead with bilateral
> upper extremity.

(Id.)  Based on the VE's testimony, the ALJ concluded that Plaintiff could perform her past relevant work as a "home health aide," DOT 354.377-014, 1991 WL 672933, and "property manager," DOT 186.167-018, 1991 WL 671326.  (AR 29.)  Thus, the ALJ found Plaintiff not disabled.  (Id.)

**V.  DISCUSSION**

Plaintiff challenges only the ALJ's evaluation of treating physician Lauren Tran's December 15, 2015 opinion.[4]  (J. Stip. at 4-9, 22-23.)  As discussed below, however, the ALJ did not err.

<u>The ALJ Properly Evaluated Dr. Tran's Opinion</u>

The ALJ gave Dr. Tran's opinion "little weight" because "it [was] not consistent with her own treating notes or objective medical evidence."  (AR 28.)  The ALJ, Plaintiff alleges, "merely

---

[4] Plaintiff does not challenge the ALJ's evaluation of Dr. Tran's report from December 16, 2015, or her undated letter, both of which the ALJ gave "little weight."  (AR 28 (citing AR 360, 417).)  Neither does Plaintiff challenge the ALJ's discounting of Plaintiff's symptom statements' credibility.  (<u>See generally</u> J. Stip. at 4-9, 22-23.)

6

claim[ed]" inconsistency without "point[ing] to which treatment notes or medical records [were] inconsistent." (J. Stip. at 7-8.) The ALJ sufficiently explained how Dr. Tran's opinion was inconsistent with her own treatment notes and therefore did not err.

### A. Applicable law

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's. Id.; see §§ 404.1527(c)(1), 416.927(c)(1).[5]

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating physician's opinion is well supported by medically

---

[5] Social Security regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. When, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); Spencer v. Colvin, No. 3:15-CV-05925-DWC, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking."). Accordingly, citations to 20 C.F.R. §§ 404.1527 and 416.927 are to the versions in effect from August 24, 2012, to March 26, 2017.

7

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight. §§ 404.1527(c)(2), 416.927(c)(2). If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ may disregard a treating physician's opinion regardless of whether it is contradicted. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). When a treating physician's opinion is not contradicted by other medical-opinion evidence, however, it may be rejected only for "clear and convincing" reasons. Id. (citing Lester, 81 F.3d at 830-31). When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id. (citing Lester, 81 F.3d at 830-31).

Furthermore, "[t]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Batson v. Comm'r of Soc. Sec. Admin, 359 F.3d 1190, 1195 (9th Cir. 2004). An ALJ need not recite "magic words" to reject a physician's opinion or a portion of it; the court may draw "specific and legitimate inferences" from the ALJ's opinion. Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). "[I]n interpreting the

evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).

The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See 42 U.S.C. § 405(g); Richardson, 402 U.S. at 401; Parra, 481 F.3d at 746. The ALJ must consider all the medical opinions "together with the rest of the relevant evidence." 20 C.F.R. §§ 404.1527(b), 416.927(b). If the "'evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted).

B. Relevant background

On December 15, 2015, Dr. Tran completed a medical report regarding Plaintiff's ability to do "work-related activities." (AR 362-64.) Based on "medical findings" that Plaintiff had "spinal stenosis" and "walk[ed with] pain" (AR 363), she indicated that Plaintiff could lift and carry less than 10 pounds occasionally ("no more than 1/3 of an 8-hour day"), stand and walk less than two hours total during an eight-hour day, and sit less than two hours total during an eight-hour day (AR 362). She also assessed that Plaintiff could sit or stand for no more than five minutes before needing to change positions "to relieve discomfort" and must "walk around" for 10 minutes every five

minutes.[6] (AR 362-63.)

Further, she found that Plaintiff could occasionally ("from very little up to one-third of an eight hour day") twist, stoop, crouch, climb stairs, and climb ladders; because of increased pain and weakness, she had impaired reaching, handling, fingering, feeling, pushing, and pulling. (AR 363.) Based on findings of Plaintiff's "limited mobility" and "unstable gait," Dr. Tran also indicated that she should "avoid concentrated exposure" to extreme cold, extreme heat, wetness, humidity, noise, fumes, and hazards. (AR 364.) Finally, Dr. Tran noted that Plaintiff "need[ed] to have support for ambulation" and would be absent from work "[m]ore than three times a month." (Id.)

Plaintiff had been seeing Dr. Tran since November 2014. (See AR 438-41.) That month, Plaintiff complained of myalgia and myositis, myofascial pain, and fibromyalgia. (AR 438.) But upon examination, Dr. Tran noted "normal" findings regarding her back, musculoskeletal system, and gait and stance and assessed her with hypertension and hyperlipidemia. (AR 438-39.) In February 2015, Plaintiff complained of hip and knee pain and demonstrated "abnormal" gait. (AR 435-36.) This was the only time in Plaintiff's seven visits to Dr. Tran that her gait was anything other than "normal." Dr. Tran diagnosed her with peripheral

---

[6] Of course, if Plaintiff had to "walk around" for 10 minutes every five minutes, she would be walking more than five hours in an eight-hour day, well beyond the less than two hours Dr. Tran said Plaintiff could manage.

10

neuropathy[7] and requested an MRI of her lumbar spine to check for spinal stenosis.[8] (AR 435-36.) An MRI conducted in April of that year showed a "mild disc bulge at L4-5 level," which resulted in "mild bilateral foraminal stenosis." (AR 458.) Dr. Tran also noted "normal" findings regarding Plaintiff's back and musculoskeletal system. (AR 433.)

A month later, in May 2015, Dr. Tran diagnosed Plaintiff with spinal stenosis and referred her to a neurosurgeon. (AR 429-31.) Plaintiff's examination revealed "normal" findings regarding her back, musculoskeletal system, and gait and stance. (AR 429-30.) She also "did not appear uncomfortable." (AR 429.) In June 2015, Plaintiff reported that she needed an "assistant at home due to decrease[d] mobility," but Dr. Tran found that her back, musculoskeletal system, and gait and stance were "normal." (AR 422-23.)

In November 2015, just a month before her opinion assessing extreme functional limitations, Dr. Tran noted that Plaintiff was applying for longterm disability. (AR 418.) Plaintiff's pain had improved and Dr. Tran observed that she had "[n]o costovertebral angle tenderness" in her back and "no abnormalities" along her cervical, thoracic, thoracolumbar, lumbar, or lumbosacral spine. (AR 418-20.) Dr. Tran noted that

---

[7] Neuropathy is a disease involving the cranial nerves or peripheral or autonomic nervous systems. See Stedman's Medical Dictionary 1211 (27th ed. 2000).

[8] Spinal stenosis is the narrowing of the spine, which puts pressure on the nerves and spinal cord and can cause pain. Spinal Stenosis, MedlinePlus, https://medlineplus.gov/spinalstenosis.html (last updated Oct. 5, 2017).

11

Plaintiff had a "diverted left foot" and referred her to a podiatrist. (AR 420.) Dr. Tran also prescribed her gabapentin,[9] requested physical therapy, and asked that Plaintiff follow up with a spinal surgeon. (AR 419-21.) In December — just one day after Dr. Tran opined that Plaintiff could not walk on her own and had numerous functional limitations — she found her back "normal" upon examination, with "[n]o costovertebral angle tenderness"; her musculoskeletal system was "normal" and showed "no abnormalities"; and her gait and stance were "normal." (AR 415-16.) She assessed Plaintiff as having a "backache" and prescribed cyclobenzaprine.[10] (Id.)

### C. Analysis

The ALJ discounted Dr. Tran's December 15, 2015 opinion as having "little weight" because it was "not consistent with her own treating notes or objective medical evidence." (AR 28.) As Plaintiff acknowledges (J. Stip. at 8), because Dr. Tran's opinion was contradicted by the opinion of consulting orthopedic surgeon Thomas Keller (see AR 251-55), which the ALJ gave "significant weight," the ALJ was required to provide only specific and legitimate reasons for rejecting it. See Carmickle, 533 F.3d at 1164; see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). The ALJ provided such a specific and legitimate

---

[9] Gabapentin is an anticonvulsant used to treat the pain of diabetic neuropathy, among other things. Gabapentin, MedlinePlus, https://medlineplus.gov/druginfo/meds/a694007.html (last updated Nov. 15, 2017).

[10] Cyclobenzaprine is a skeletal muscle relaxant used to relieve pain and discomfort. Cyclobenzaprine, MedlinePlus, https://medlineplus.gov/druginfo/meds/a682514.html (last updated Feb. 15, 2017).

12

reason by discussing inconsistencies between Dr. Tran's treatment notes and her opinion.

Contradictions between a treating physician's opinion and her own treatment notes constitute a specific and legitimate reason for discounting that opinion. Valentine v. Comm'r Soc. Sec. Admin, 574 F.3d 685, 692-93 (9th Cir. 2009); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); Stewart v. Colvin, 674 F. App'x 634, 635 (9th Cir. 2017). As Defendant states (see J. Stip. at 18-19), the ALJ repeatedly noted how Dr. Tran's treatment notes and the specific findings therein were inconsistent with any assessment of severe functional limitations. (See AR 23-27); see also Wilhelm v. Comm'r of Soc. Sec. Admin., 597 F. App'x 425, 425 (9th Cir. 2015) ("[Treating physician's] opinion . . . [was] contradicted [by] her own treatment notes, which noted that [plaintiff's] back pain could at times be managed with medication, was sometimes mild or intermittent, and did not prevent [her] from brushing and feeding her horses.").

In her nonseverity determination as to Plaintiff's fibromyalgia, for example (which Plaintiff does not challenge), the ALJ relied upon Dr. Tran's December 16, 2015 physical examination of Plaintiff — which occurred just one day after she wrote her opinion outlining severe functional limitations — in which she "observed no abnormalities." (AR 24 (citing AR 415).) And in discounting the credibility of Plaintiff's allegation that she could barely stand or walk — which Plaintiff also does not challenge — the ALJ pointed to Dr. Tran's notes indicating "normal gait." (AR 26 (citing AR 426, 430, 439).) In detail,

13

the ALJ explained that Dr. Tran repeatedly reported "normal clinical findings of the back with no tenderness"; "no abnormalities" in the cervical, thoracic, thoracolumbar, and lumbosacral spine; "normal" musculoskeletal-system findings; "no swelling of the ankles"; and "normal" gait, stance, sensation, and deep tendon reflexes, including in December 2015, at the time of Dr. Tran's opinion. (Id. (citing AR 414-64).) Less than a page later, the ALJ began her discussion of how much weight to give each doctor's opinion, discounting Dr. Tran's in part because it was inconsistent with her own treatment notes, which the ALJ had just detailed. (AR 24-28); see, e.g., Murray v. Colvin, No. C-13-01182 DMR, 2014 WL 1396408, at *5 (N.D. Cal. Apr. 10, 2014) (finding that ALJ provided specific and legitimate reasons to reject treating physician's opinion because "[c]ontrary to Plaintiff's assertion, the ALJ detailed the objective findings in the record, albeit elsewhere in her decision"); see also Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (contradiction between treating physician's opinion and treatment notes from same day constituted "clear and convincing reason for not relying on the doctor's opinion"); Hutcheson v. Comm'r of Soc. Sec., No. 1:16-cv-00366-SKO, 2017 WL 3839956, at *7 (E.D. Cal. Sept. 1, 2017) (finding inconsistency between treating-source notes and opinion "a valid specific and legitimate reason to reject this opinion" because notes "reflect[ed] that Plaintiff had generally mild symptoms — and not the symptoms one would expect based on the extreme limitations provided by [the treating physician] in his . . . opinion" (emphasis in original)).

Indeed, of the seven times Plaintiff saw Dr. Tran, she indicated only once that Plaintiff walked with an abnormal gait. (AR 436.) Her treatment notes otherwise regularly reflected "normal" findings regarding Plaintiff's back, musculoskeletal system, and gait and stance (see, e.g., AR 439 (Nov. 2014), 433 (Apr. 2015), 429-30 (May 2015), 422-23 (June 2015), 419-20 (Nov. 2015), 415-16 (Dec. 2015)). Even when Plaintiff reported needing an assistant at home because of her alleged decreased mobility, Dr. Tran found that her back and musculoskeletal system were "normal" and that she had "normal" gait and stance. (AR 422-23.)

Thus, substantial evidence supports the ALJ's finding that Dr. Tran's opinion as to Plaintiff's functional limitations was contradicted by her own treatment notes, which the ALJ adequately explained. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (finding that "[t]he ALJ provided adequate reasons for not fully crediting" treating physician's opinion because it was inconsistent with treatment notes and ALJ's reasoning was "supported by substantial evidence"); Murray, 2014 WL 1396408, at *5.

Because the ALJ adequately identified and explained a specific and legitimate reason for rejecting Dr. Tran's opinion, inconsistency with her own treatment notes, the Court need not consider whether she erred with her other stated reason, inconsistency with the objective medical evidence. See DeBerry v. Comm'r of Soc. Sec. Admin., 352 F. App'x 173, 176 (9th Cir. 2009); Bartels v. Colvin, No. CV 15-5144 AFM, 2016 WL 768851, at *4 (C.D. Cal. Jan. 29, 2016).

## VI. CONCLUSION

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[11] IT IS ORDERED that judgment be entered AFFIRMING the Commissioner's decision, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice.

DATED: December 13, 2017

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[11] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."